1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Carl R. Retter, Attorney at Law
State Bar of Arizona #10425
Suite #171
4800 North 68th Street
Scottsdale, AZ 85251-1138
Phone: 480,991-7926
Fax: 480,946-0177
E-mail: carlretter@yahoo.com
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Sheila C. Campbell-Thomson, | Case # CV-08- |
| Plaintiff, | |
| vs. | **COMPLAINT AND DEMAND FOR** |
| Cox Com, Inc., a Delaware Corporation, d.b.a. "Cox Communications", | **TRIAL BY JURY** |
| Defendant. | |

Plaintiff Sheila C. Campbell-Thomson ("Campbell-Campbell-Thomson"), by Carl R. Retter, her undersigned attorney, seeks relief through this Complaint and Demand for Jury Trial against the Defendant, Cox Com, Inc., a Delaware Corporation, d.b.a. "Cox Communications", hereinafter called "Cox Com".

This Complaint and Demand for Trial by Jury is filed pursuant to Federal Rules of Civil Procedure ("FRCP") Rules 7(a), 8(a), and 38(b).

1

**PLAINTIFF'S TWO CLAIMS**

2 Count One: Retaliation in violation of the Fair Labor Standards Act, 29

3 U.S.C. 215(a) 3, and 29 U.S.C. 216(b)

4 Count Two: Interference with Prospective Contractual Relations

5 (Blacklisting) (Restatement 2d of Torts, sec. 766B), a tort claim arising

6 under Arizona law

7 **JURISDICTION AND VENUE OF THIS COURT**

8 The United States District Court for the District of Arizona has

9 jurisdiction over Count One of this Complaint pursuant to **(1)** 28 U.S.C.

10 1331 (action arising under laws of the United States), **(2)** 28 U.S.C.

11 1332 (diversity of citizenship jurisdiction with both claims exceeding

12 $75,000 exclusive of interest and costs), and **(3)** 29 U.S.C. 216(b) (Fair

13 Labor Standards Act jurisdiction).

14 This Court has jurisdiction over Count Two of this Complaint

15 pursuant to **(1)** 28 U.S.C. 1332 (diversity jurisdiction, supra), and (2) 28

16 U.S.C. 1367(a) (supplemental jurisdiction for state law claim).

17 This Court has venue for the claims herein because (1) Plaintiff

18 Campbell-Thomson is a citizen and resident of the State of Arizona, (2)

19 the Defendant engages is business within the State of Arizona, and (3)

20 all acts alleged herein occurred within the State of Arizona.

21 **FACTUAL ALLEGATIONS FOR BOTH CLAIMS**

22 PARAGRAPH ONE

23 Plaintiff Campbell-Thomson is and has been at all times material

24 to this Complaint an adult resident of Maricopa County, Arizona and a

25 citizen of the United States of America.

26

27

28

de

## PARAGRAPH TWO

Defendant Cox Com, Inc. is, and has been at all times material to this complaint (1) a Delaware corporation and citizen of that State that has engaged in business in Arizona, (2) an "enterprise engaged in commerce or in the production of goods for commerce" as that term is defined in 29 U.S.C. 203(r)1 and s(1), and (3) doing business in Arizona as "Cox Communications".

## PARAGRAPH THREE

Campbell-Thomson was employed by Cox Com from June 6, 1996 until January 10, 2007, when Cox Com fired Campbell-Thomson without prior notice or any good cause, effective immediately, falsely alleging that Campbell-Thomson had submitted false work reports.

## PARAGRAPH FOUR

At all times during Campbell-Thomson's employment by Cox Com, supra, she was an "employee" of Cox Com as that term is defined in 29 U.S.C. 203(e)1, and Cox Com was her "employer" as that term is defined and used in 29 U.S.C. 203(d).

## PARAGRAPH FIVE

When Cox Com fired Campbell-Thomson on January 10, 2007, she was employed as a "field service representative, customer loyalty" loyalty representative" ("FSR Customer Loyalty") earning an hourly gross wage of $21.64. Prior to that date, she had received good evaluations and had not been disciplined or demoted, and she had performed her job duties in an honest, competent, loyal and dependable manner.

1

2

## PARAGRAPH SIX

3

4

    In February, 2006, Campbell-Thomson was assigned to a "team"

5

of approximately 11 FSR Costumer Loyalty employees under the

6

supervision of team leader Carlton Ray Williams.  Mr. Williams gave to

7

Campbell-Thomson and his other his team members a pamphlet titled

8

"Customer Loyalty Daily Planner" that announced, defined, and imposed

9

a new work hours schedule for the team, which would require each to

10

work a 15 hour day, from 6 am to 9 pm, with only meal breaks.

11

## PARAGRAPH SEVEN

12

    On April 5, 2006, Williams conducted a team meeting, at which

13

time the published new work schedule was discussed.  Campbell-

14

Thomson spoke up to protest that the new schedule would require the

15

team members to work far in excess of forty hours per week, but the

16

plan did not include any overtime pay as required by the Fair Labor

17

Standards Act (29 U.S.C. 207(a)1) ("FLSA").  Mr. Williams got very

18

angry at Campbell-Thomson, verbally insulted her in front of the other

19

team members, yelled at her that she was "a fucking bitch", and told her

20

that the team members had no right to any overtime pay for hours

21

worked in excess of forty per week, that she should not complain about

22

the schedule to Cox Com Human Resources, and that she had a bad

23

attitude.  Under the new schedule, team members would not report their

24

actual work hours in order to avoid Cox Com having to pay required

25

overtime.

26

27

28

1

2

3

### PARAGRAPH EIGHT

4 On April 11, 2006, supra, Campbell-Thomson contacted Mr.

5 Williams' supervisor, Lenny Trujillo, the Field Customer Loyalty

6 Manager.  She reported the new schedule imposed by Mr. Williams,

7 complained that it required overtime work but would not provide any

8 overtime pay, and reported what had happened at the team meeting

9 when she raised her concerns to Mr. Williams.  Mr. Trujillo listened, and

10 then simply said he would get back to Campbell-Thomson on her

11 complaint about Williams and the new schedule.

12 ### PARAGRAPH NINE

13 When time went by and she heard nothing further from Mr. Trujillo

14 or about the new schedule, on May 5, 2006, Campbell-Thomson

15 decided to go see the Cox Com Human Resources supervisor, Heather

16 Ormont, about her overtime concerns and the abusive treatment by Mr.

17 Williams at the team meeting when she had brought up the matter.

18 When she got to Ms. Ormond's office, she was not in, but her

19 supervisor, Jim Roberts was there, and she spoke to him instead.  She

20 gave him her copy of the pamphlet distributed by Mr. Williams to the

21 team members, paragraph six supra. He listened and then told

22 Campbell-Thomson that he and Ms. Ormont would look into her

23 concerns and get back to her.  They never did.

24 ### PARAGRAPH TEN

25 In June, 2006, Cox Com changed the geographical territory (zone

26 or area) that had been assigned to Campbell-Thomson, to three non-

27

28

contiguous areas to cover, which was unprecedented because such zones had always been a single contiguous area.  The three areas non-adjacent were in North Scottsdale, South Scottsdale, and Northeast Phoenix.  This new field assignment was very undesirable and adverse to Campbell-Thomson because (1) it would require much more travel time and allow her less time to perform direct service work, and (2) most of the areas were "dead zones" with far below average service activity which meant that Campbell-Thomson would get less field work to do and thus fail to meet required performance goals for each FSR Customer Loyalty employee.  Campbell-Thomson's transfer to her new "zones" became effective July 16, 2006.  This transfer was the **first act of retaliation** by Cox Com to punish Campbell-Thomson for her complaint about its failure to pay overtime as required by the FLSA.

PARAGRAPH ELEVEN

In August, 2006, Campbell-Thomson became frustrated by not getting overtime pay, and instead getting retaliation by Cox Com for requesting it, so she contacted the United States Dept. of Labor, Wage and Hour Division ("USDOL") to confirm that she was legally entitled to be paid overtime pay under the FLSA.  After Campbell-Thomson reported the facts about her work schedule, the USDOL gave her its form to fill out to file a complaint/request for investigation, and she filled it out and submitted it to the USDOL. Soon thereafter, the USDOL informed Cox Com of her complaint and its investigation into it.

PARAGRAPH TWELVE

On September 23, 2005, Cox Com transferred Campbell-Thomson from her position as a field operations representative to her

position as an FSR Customer Loyalty. Campbell-Thomson had performed her duties as a field service operations representative ("FSR") well, and had enjoyed that assignment.

PARAGRAPH THIRTEEN

In September, 2006, she learned that there were two FSR openings, and she was well qualified for both. Cox Com had a policy of hiring or filling open positions from within their ranks if a qualified person was available, and would hire a new person only when the position could not be filled from within.

PARAGRAPH FOURTEEN

When she learned of these two openings for an FSR, Campbell-Thomson wanted to transfer back to be an FSR because (1) she would not be expected as an FSR to have to work unpaid overtime hours, (2) her complaints to Williams, Trujillo, and Roberts had all been ignored, (3) Williams was very hostile towards her after she complained about the new schedule calling for unpaid overtime at the April 5, 2006 team meeting and later to Mr. Trujillo and then to Mr. Roberts, and (4) she knew that her new work zone had been created in June to cause her to fail to met her set work goals and thus be terminated. She then met with Williams, Trujillo, and Roberts to request a transfer to one of the open FSR positions. They told her that she could not be transferred because she had become a "troublemaker" because of her repeated protests and complaints about the new work schedule (which did not comply with the FLSA, supra).

PARAGRAPH FIFTEEN

These two open FSR positions were eventually filled by new hires, and Campbell-Thomson's request to transfer to one of them was denied even though (1) she was the best qualified person who applied for the positions, and (2) Cox Com's own policies gave preference to filling such open positions with existing employees.

### PARAGRAPH SIXTEEN

This denial of a transfer, paragraph fifteen supra, was an adverse employment action by Cox Com and its **second retaliatory act** against Campbell-Thomson for having complained about the FLSA violation, supra.

### PARAGRAPH SEVENTEEN

In November, 2006, Cox Com sent one or more attorneys or executives from its Atlanta, Georgia corporate headquarters to interrogate Campbell-Thomson about her overtime complaint that she had filed with the USDOL. She cooperated by answering all of their questions, but still received no overtime pay or relief from the retaliatory conduct that she had experienced since she first raised her concerns about Cox Com violating the FLSA at the April 5, 2006 team meeting, supra.

### PARAGRAPH EIGHTEEN

Campbell-Thomson took approximately three weeks of earned but unused vacation leave from Cox Com in December, 2006-January, 2007, and a few days after her return, she was unexpectedly fired for allegedly "coding four accounts as disconnected" when she had not in fact disconnected them. Campbell-Thomson denied the allegations and offered proof that they were false, but Cox Com ignored her protest and

her offer of proof and fired her anyway, without following its customary procedures for disciplining employees, as a pretext to cover-up its real reason for firing her which was to retaliate and punish her for complaining internally about Cox Com's FLSA violation and then reporting it to the USDOL. The termination of employment by Cox Com was its **third act of retaliation.**

### PARAGRAPH NINETEEN

The conduct of Cox Com toward Campbell-Thomson, supra, caused her to suffer damages including, inter alia, the loss of her job and the income from that job, loss of self-esteem, worry about how she would support herself and her family in the future, embarrassment, humiliation, anger, fear, anguish and emotional distress.

### PARAGRAPH TWENTY

Campbell-Thomson also suffered harm to her reputation and future employability through self-compelled publication defamation, since she has been asked by prospective new employers why she left her job at Cox Com and has had to answer honestly that she was fired, and when asked why, has had to reveal that she was fired for submitting false reports of work performed which she did in fact not do.

### PARAGRAPH TWENTY-ONE

After Campbell-Thomson was fired by Cox Com, she made diligent efforts to find new employment that she is qualified for given her skills and experience, but she remained unemployed for a long period before eventually finding and accepting lesser paying work that was outside her chosen field (cable communications technician including customer relations, installation, repair, and removal), which has caused

her to suffer a complete loss of income followed by a significantly lower income through the present date.

PARAGRAPH TWENTY-TWO

Because Campbell-Thomson could not find a new job after being fired, she applied for and received unemployment benefits through the Arizona Dept. of Economic Security.  Cox Com opposed her application for unemployment benefits, falsely stating to the ADES that Campbell-Thomson was fired for misconduct in submitting false reports claiming that she did work that she did not do.

PARAGRAPH TWENTY-THREE

The ADES held a statutory due process hearing on Campbell-Thomson's application and eligibility for unemployment benefits which was conducted over three days, July 13, 2007, August 1, 2007, and August 17, 2007, before Administrative Law Judge James D. Walen.  In his 9 page decision, Judge Walen found and concluded that:

> "In this case the claimant (Campbell-Thomson) denied any allegations of misconduct and contended that she did her work properly and did not falsify any records.  The employer (Cox Com) contended that the claimant falsified company records and represented that she did certain work when she did not.
>
> . . . . . . . . . . . . . . . . . . . .
>
> The Tribunal (undersigned Administrative Law Judge) finds that the evidence presented by the claimant is more credible than that presented by the employer.  The claimant's testimony and evidence is supported by photographs and is corroborated by her previous supervisor.  The employer was asked to produce additional documentation prior to the final hearing, but failed to so and did not appear for the continued

1
2
3
4
5

hearing held on 8/17/07.   The employer has failed to
establish misconduct in connection with the employment.
Therefore the Administrative Law Judge concludes that the
claimant was discharged for reasons other than willful or
negligent misconduct with the employment."
Decision of ADES Appeal Tribunal, case # U-1039388-001,
dated August 20, 2007, at pg. 6.

6

7

## PARAGRAPH TWENTY FOUR

8    The decision of the ADES Appeal Tribunal, paragraph 23 supra,

9  became a final decision on the merits when no appeal was perfected

10 thereafter as provided by Arizona law.

11   ## PARAGRAPH TWENTY-FIVE

12    The conduct of Cox Com in providing false information and

13 evidence to the ADES in order to try to prevent Campbell-Thomson from

14 receiving the unemployment benefits that she was entitled to under law

15 and desperately needed to help her family survive economically was a

16 continuation of Cox Com's malicious retaliation against Campbell-

17 Thomson for asserting her rights under the FLSA to overtime pay and

18 was a **fourth act of retaliation.**

19   ## PARAGRAPH TWENTY-SIX

20    Campbell-Thomson knew from her experience as a Cox Com

21 employee that much of the field work done by Cox was performed by

22 independent contractors to whom Cox assigned certain work that its

23 own employees_were not available to do.   Therefore, when she was

24 fired, given her skills and experience and knowledge that those

25 independent contractors needed persons with her skills for their jobs

26

27

28

with Cox and others in the cable and communications fields, she applied to all of those contractors that she was aware of to try to find a new job.

### PARAGRAPH TWENTY-SEVEN

None of the independent contractors Campbell-Thomson applied for work with would hire her.  Five of the contractors initially expressed to Campbell-Thomson their desire to hire her because they needed to hire someone with her skills and experience but told her that they could not hire anyone to do work on any Cox Com contracts without first getting Cox Com pre-approval of the employees to be sent to do the work on such contracts, and therefore they would check with Cox to see if Cox had any objection to her.

### PARAGRAPH TWENTY-EIGHT

Cox Com requires its contractors to provide the identification of any employee the contractor may use to perform any work on behalf of Cox, and has a contractual right or practice of cancelling or refusing to do business with any contractor who uses any persons it does not approve of, in effect maintaining a "blacklist".

### PARAGRAPH TWENTY-NINE

Each of the five independent contractors to whom Campbell-Thomson had applied for a job (paragraph 27 supra) eventually decided not to hire her because they were informed by Cox that she was "blacklisted", meaning that she could not be sent to perform on any jobs on Cox Com contracts or customers.

### PARAGRAPH THIRTY

Such blacklisting has prevented Campbell-Thomson from finding new suitable employment in her chosen field, and has caused a

continuing loss of income for herself and her family, a reduction in her standard of living, an inability to use her work skills in an optimum way to maximize her income potential and enjoyment of her work life.

### PARAGRAPH THIRTY-ONE

This blacklisting by Cox Com (paragraphs 26 through 30 supra) was and is an intentional and improper interference with Campbell-Thomson's prospective contractual relations (employment opportunities) with Cox Com's independent contractors since such blacklisting conduct against Campbell-Thomson:

**(A)** Is unlawful and violates Arizona public policy, per Arizona Constitution Article 18, Sec. 9;

**(B)** Induced and induces such contractors not to hire Campbell-Thomson although they need workers with her skills, and prevents Campbell-Thomson from obtaining such employment with those contractors; and

**(C)** Was and is continuing **fifth act of retaliation** against Campbell-Thomson for exercising her rights under the FLSA.

### PARAGRAPH THIRTY-TWO

The USDOL investigated Campbell-Thomson's complaint that she filed in August, 2006 (paragraph 11 supra) and in October, 2007 (nine months after Cox Com had fired Campbell-Thomson) it made a finding and determination that Cox Com had violated the FLSA by not paying overtime in violation of 29 U.S.C. 207(a), and ordered Cox Com to pay unpaid overtime wages of the gross amount of $5,891.26. A true copy of that determination by the USDOL is attached hereto, infra, as Exhibit #1, and incorporated herein by reference pursuant to FRCP Rule 10(c).

## PARAGRAPH THIRTY-THREE

Cox Com did not contest the finding and order of the USDOL (Exhibit #1 infra) and finally paid Campbell-Thomson the overtime pay that it had refused to pay her.   See Exhibit #2, infra, which is incorporated herein by reference pursuant to FRCP Rule 10(c).

## PARAGRAPH THIRTY-FOUR

The conduct of Cox Com toward Campbell-Thomson set forth herein, supra, was egregious, done with an evil intent to punish her for asserting her rights under the FLSA, malicious, and was series of retaliatory acts in deliberate violation of the FLSA {29 U.S.C. 207(a); 29 U.S.C. 211(c); and 29 U.S.C. 215(a)3}.  She is entitled to, inter alia, an award of punitive damages.

## **PLAINTIFF'S CONSENT**

Pursuant to 29 U.S.C. 216(b), I consent to be the Plaintiff in this action against the Defendant, my former employer.

Signed this 5th day of September, 2008.

Sheila C. Campbell-Thomson

## **DEMAND FOR TRIAL BY JURY**

Plaintiff Campbell-Thomson demands a trial by jury, pursuant to FRCP Rule 38, and the U.S. Constitution Seventh Amendment.

## **RELIEF REQUESTED**

Based on the foregoing, Plaintiff Campbell-Thomson requests the following relief against Defendant Cox Com:

**Count One:** Retaliation in violation of the Fair Labor Standards Act, 29 U.S.C. 215(a) 3, and 29 U.S.C. 216(b):

1.   Compensatory and general damages in an amount to be determined by the trier of fact in excess of $75,000.00.

2.   Punitive damages in an amount to be determined by the trier of fact.

3.   Injunctive relief, including, inter alia, back pay, and reinstatement with all lost benefits and seniority or front pay.

4.   Attorneys fees and costs pursuant to 29 U.S.C. 216(b), 28 U.S.C. 1920, and FRCP Rule 54(d).

**Count Two:**   Interference with Prospective Contractual Relations (Blacklisting) (Restatement 2d of Torts, sec. 766B), a tort claim arising under Arizona law:

1.   Compensatory and general damages in an amount to be determined by the trier of fact in excess of $75,000.00.

2.   Punitive damages in an amount to be determined by the trier of fact.

3.   Taxable costs pursuant to FRCP Rule 54(d)1, and 28 U.S.C. 1920.

Respectfully submitted this 5th day of September, 2008.

Carl R. Retter
Attorney for Plaintiff

## **Attachments**

**Exhibit #1:** USDOL Wage and Hour Division Overtime Findings, case ID# 1450026 (one page)

**Exhibit #2:** Letter from Cox Com to Campbell-Thomson dated October 26, 2007 and enclosed payment (two pages)

This document shall be filed pursuant to United States District Court for Arizona ECF Procedures on this date (above).