**Carl R. Retter, Esq.**
State Bar #10425
4800 N. 68th Street
Scottsdale, AZ 85251-1138
(480) 991-7926
(480) 946-0177 fax
carlretter@yahoo.com

**Cheri L. McCracken, Esq.**
State Bar #006111
2402 N. 24th Street
Phoenix AZ 85008-1804
(602) 231-0595
(602) 231-0841 fax
cmc2000e@qwest.net

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sheila C. Campbell-Thomson,<br><br>  Plaintiff,<br>vs.<br><br>Cox Com, Inc., a Delaware Corporation, d.b.a. "Cox Communications",<br><br>  Defendant | **No.: CV 08-1656-GMS**<br><br>**SHEILA CAMPBELL-THOMSON'S RESPONSE TO COX'S MOTION FOR SUMMARY JUDGMENT [Dkt 40]** |

Plaintiff Sheila Campbell-Thomson ("Thomson"), responds to Cox's Motion for Summary Judgment. Ms. Thomson was a highly valued career Cox employee prior to her complaints of unpaid overtime (PSOF 36). She was pictured in Cox's Annual Report 2003, with twelve other employees and praised as "dedicated, devoted and diligent." Her employee evaluations over the years were similarly laudatory[1]:

> **[Y]ou always make sure it [your work] is of the highest quality. (Thomson Eval, Exh. F, COX0088-0089);**
>
> **[Y]ou promote goodwill display excellent integrity traits . . . and set the example. (Thomson Evaluation 1/1/03-12/31/03, Exh. H, COX0094-0096); I am impressed with your work ethic and follow through. Sheila you work well with your peers and are very reliable. You are honest and straightforward. (Exh. L, COX0108-0110).**

---

[1] Exhibits to RDSOF are identified by letters.

# **MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Ms. Thomson requests that this Court grant Plaintiff's Motion for Summary Judgment and deny Cox's Motion for Summary Judgment. ("DMSJ" [Dkt 40], "PMSJ" [Dkt 42]).  This response is supported by PMSJ, Plaintiff's Statement of Facts in Support of her Motion for Summary Judgment ("PSOF" [Dkt 43-44]), all exhibits thereto, and Plaintiff's Objection and Controversion of Defendant's Statement of Facts. ("RDSOF"). Summary judgment is inappropriate where as here there are issues of genuine material fact.[2]

Ms. Thomson had a stellar career at Cox before exercising her rights under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA").  She was retaliated against for protected activity after repeatedly complaining to her employer about unpaid overtime and making a complaint to the US Dept. of Labor ("DOL").  She suffered adverse actions, including termination.

## II.   RETALIATION ELEMENTS

In the Ninth Circuit the elements of retaliation under the FLSA require: protected activity, adverse action, and casual connection.

1. It is undisputed Ms. Thomson engaged in protected activity. (DMSJ p.2:22-23) This element is met. (PSOF 8, 12, 14-15, 43)
2. Cox took adverse action against Ms. Thomson that would discourage an employee from complaining. This element has also been met. PSOF 13, 17, 20, 23-26; DSOF 22-23, 26; Exh. B; RDSOF 11, 25, 35, 51, 74.
3. A causal connection between the adverse action and the protected activity has also been proven (PSOF 12-13, 15, 17, 25-26; Exh. B); P's Exh. 1, Depo Exh. 13; DSOF 118, 121, 126-129; RDSOF 140.

---

[2]A quick count shows objections to DSOF: Hearsay 12; Inaccurate Misleading 23, No Foundation 32, 73 Denied and Admitted.

2

There is direct evidence of the retaliation and temporal proximity. Instantaneously, in front of her entire team, her supervisor screamed "fucking bitch" at her when she raised the issue of unpaid overtime. (PSOF 13, 36; DSOF 118). Within 2 weeks of HR learning she filed with DOL, the false audits start, leading to her termination.(RDSOF 181, 183, Exh. 1 at 225-230; 234).

### A. DIRECT EVIDENCE TRIGGERS MIXED MOTIVE ANALYSIS

When direct evidence is produced showing her employer was motivated by retaliatory animus, she may then proceed under the "mixed motive" scheme, shifting the burden to Cox to prove that it would have taken the adverse action even if she had not engaged in protected activities. Direct evidence consists of sexist, racist, or similarly discriminatory retaliatory statements or actions by the employer. ***Cochlan v. American Seafoods Company***, 413 F.3d 1090, 1095 (9th Cir. 2005); ***Head v. Glacier Northwest Inc.***, 413 F.3d 1053, 1057-1058 (9th Cir. 2005).  There is direct evidence. Ms. Thomson has also provided both specific and substantial circumstantial evidence. ***Bodett v. CoxCom Inc.***, 388 F.3d 736, 743 (9th Cir. 2004).[3]

Being called a "fucking bitch" immediately after complaining about working unpaid overtime (PSOF 8, 12-13; DSOF 118) and the admission (DSOF 22-23, 26, 36) that the supervisor wanted to fire her at that time, triggers the mixed motive standard. See ***Contreras v. Corinthian Vigor Ins. Brokerage, Inc.***, 103 F.Supp.2d 1180 (N. D. Ca 2000) <u>relied on by the Cox</u>.  Cox has not and cannot prove that it would have taken same actions if no protected activity occurred.

### III. OVERVIEW

This is a case of wage theft. Either Cox, a multimillion dollar corporation employing thousands of workers is "stealing" wages from employees by a corporate culture that refuses to pay them earned overtime, or Ms. Thomson, a career employee at Cox, is stealing wages by claiming payment of $12 for work she did not

---

[3]The Ninth Circuit questioned if such a showing is needed ***Cornwell v. Electra Central Credit Union***, 439 F.3d 1018, 1030-31 (9th Cir. 2006).

perform. Ms. Thomson cannot be fired for complaining about unpaid overtime. (PSOF 17, 22, 26, 36).

Cox would have the Court believe she falsely claimed to have done 12 disconnects, earning a dollar per disconnect, or $12. Falsely claiming to have disconnected customers is a violation of Cox's policies and is the alleged reason for the termination. (D's Exh.19, COX0456). In addition to being a violation of Cox's policies, falsifying work records is a violation of Ms. Thomson's known character of integrity and honesty. (PSOF 16, 24, 36; RDSOF 51).

In order to believe that Cox rightly or wrongly believed what it claimed, that she falsely designated disconnects in order that Cox pay her $12 for 12 disconnects she did not actually perform you must also believe Ms. Thomson, an exemplary career employee at Cox, went from being a star performer to a thief (RDSOF 51; PSOF 1-2, 6, 16, 26-27, 29-32, 36). If Cox didn't believe that Ms. Thomson stole the $12 of wages, then why did Cox use this "pretext" to fire her?

The pretext is not hard to discern. This star performer had worked for ten years in the field for Cox, in a position that paid her for all overtime (RDSOF 51; PSOF 2, 16). There was no problem. However, when Ms. Thomson began working in the Customer Loyalty Department, it was Cox's unwritten corporate policy to not pay overtime. (Exh. 1 at 149-152; P's Exh. 5 at 23:24-24:7). Ms. Thomson, and the others, were subjected to wage theft by Cox. After her termination Cox was ordered to pay Ms. Thomson $5,891.26 in gross unpaid overtime wages and her co-workers tens of thousands of dollars. (PSOF 7; DSOF 182; RDSOF 182; Exhs. O; P). When she brought up the issue of unpaid overtime, she was immediately screamed at for voicing that complaint. (See A, p. 6). Within 2 weeks of doing an interview on FLSA issues at the direction of Cox Headquarters and telling HR she had filed with DOL, she allegedly failed audits wholesale. (RDSOF 181, 183, Exh 1 at 225-230; 234; Exh B). She then was subjected to one retaliatory adverse action after another and then terminated. The transparency of the pretext is revealed by the fact that Cox has

4

not and cannot prove Ms. Thomson had not done the disconnects. Neither her credible evidence nor her reputation for integrity and excellence were considered by Cox. (PSOF 6, 30-33).

## IV. MS. THOMSON'S PROTECTED ACTIVITY

It is undisputed that Ms. Thomson repeatedly engaged in the statutorily protected activity. (DMSJ p 2:22-23). An adverse action is found when a reasonable employee, in her position, might have been dissuaded from making the claim because of the employer's actions. ***Carrington v. City of Des Moines, Iowa,*** 481 F.3d 1046 (2007) cited with approval in Cox's cited case ***Weger v. City of Ladue*** 500 F.3d 710, 726. Cox took numerous adverse actions against Ms. Thomson. Included, but not limited to:

A. Williams calling her a "fucking bitch" at the team meeting. It is undisputed is that <u>immediately after complaining</u> about the new Handbook, requiring Customer Loyalty Representatives ("CLR's") to work up to 15 hours a day with no overtime pay, on 4/05/06, Williams wanted to fire her. (PSOF 13; DSOF 118-120).

B. Receiving a gerrymandered non-contiguous geographic zone to work. (PSOF 17, Exh. MM). The "stacked rankings" for the bidding zones were redetermined after the 4/05/06 meeting. (PSOF 17). Formerly, disconnects per month were used to calculate ranking, now and for the first time disconnects only on days worked were used. (DSOF 74, 90). This lowered Ms. Thomson's ranking and she was left a three-piece zone, the only zone not geographically contiguous. (Exh. MM).

C. Mr. Trujillo, doing nothing when she told him there had only been 32 "saves" or Revenue Generating Units (RGU) in her zone in the three months prior. (P's Exh. 1, Depo Exh. 13). The quota for "saves" in the CLR handbook was five RGU's per day. (D's Exh. 14).

5

    D.    Mr. Williams attempted to fired her for unethical sales at her Cox special assigned project in 7/2006, even as Cox alleges Williams was emphasizing sales. (PSOF 25; RDSOF 51; Exh. 1 at 74).

    E.    Allegedly failing Quality Assurance Audit ("QAA's") after each complaint of unpaid overtime. (D's Exh. 6) Failed audits was ultimately the pretextual reason to terminate her.[4] The pattern of an adverse action immediately following her protected activities is seen in Exh. B.

    F.    Preventing her from transferring back to her prior position in the field. (PSOF 24; RDSOF 51, Exhs. D-M).

    G.    Terminating her after creating a pretext of false disconnects. (See *infra*, PSOF 26, 30-34, Exhs. B; KK; D's Exh. 6, 19, 20, 21).

    H.    Sudden, unfounded defamatory information about her. (D's Exh. 11, Widhalm email; D's Exh. 13, Dolezal affidavit; DSOF 51 which can come in for the retaliatory state of mind of Cox, FRE 803).

## V.  CAUSAL

A causal connection is shown between the adverse actions and the protected activity. Mr. Williams, the team leader, immediately screamed at Ms. Thomson "fucking bitch" in a public meeting when she questioned working unpaid overtime. On 04/05/2006 (PSOF 12-13; DSOF 118)[5]. He told Mr. Cotton that he wanted to fire her after that meeting (DSOF 118-119). She had walked out after his profane screaming to get sick (PSOF 13). Temporal proximity supports a causal connection. **Ray v. Henderson**, 217 F.3d 1234 (9th Cir. 2000) **Vasquez v. County of Los Angeles**, 349 F.3d 634, 641 (9th Cir. 2003). The temporal proximity here was instantaneous (PSOF 12-13).

---

[4] The Ninth Circuit recognizes verbal complaints to management as protected activity, in **Lambert v. Ackerly**, 180 F.3d 997 (9th Cir. 1999)(*en banc*). Also see **Somoza v. Univ. of Denver**, 513 F.3d 1206 (10th Cir. 2008) cited by Cox (informal complaints to supervisors constitute protected activity).

[5] Oddly, D's Exh. 4, Williams affidavit, does not address this.

When an adverse action closely follows the complaint, retaliatory intent may be inferred, the temporal proximity alone constitutes strong circumstantial evidence of retaliation. ***Pardi v. Kaiser Foundation Hospitals***, 389 F.3d 840; ***Bell v. Clarkamus County***, 341 F.3d 858, 865-66 (9th Cir. 2003).

Retaliation is anything that could dissuade a reasonable employee from protected conduct. ***Burlington v. White***, 548 U.S. 53, 126 S.Ct. 2405 (S. Ct. 2006). A public attack that humiliates an employee and sends them running out to throw up would dissuade anyone as would being fired. (DSOF 118-119; PSOF 13).

### A. NINTH CIRCUIT STANDARD

In the Ninth Circuit, lateral transfers <u>support an adverse action finding</u> as do <u>unfavorable job references</u> and <u>changes in work schedules</u>. ***Ray v. Henderson***, 217 F.3d 1234, 1241 (9th Cir. 2000). The standard is "that an action is cognizable as an adverse employment action if it is <u>reasonably likely</u> to deter employees from engaging in protected activity," *Id.* at 1243.

The EEO Compliance Manual, relied on in ***Ray***, has interpreted an adverse employment action to mean "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the <u>charging party or others from engaging in protected activity</u>." (Emphasis added). EEOC Compliance Manual §8, Retaliation (1998). The actions of Cox are adverse. The test is not and has never been that the complainant must be the one dissuaded.

Oral complaints are protected activity under the FLSA in the Ninth Circuit. ***Lambert v. Ackerly***, 180 F.3d 997 (9th Cir. 1999) *(en banc)*, 120 S. Ct. 936 (2000) *(cert denied)*. It is clear as long as the substance of the allegations are communicated to the employer, the employee is protected. ***Ackerly*** holds that the FLSA is to be read and interpreted very broadly. Ms. Thomson's protected activity

7

is succinctly shown in Exh. B. *Id.* at 108.[6]

## B.   ZONE IS ADVERSE ACTION

Cox incorrectly argues that the reconfiguration of work zones for Williams CLR's affected all equally, and thus is not an adverse action. Ms. Thomson was affected differently and more than others. First, the producing parts of her initial zone were given to others (Exhs. ZZ; MM; N). Second, the change in the rules from an accountability of 350 disconnects/month to only 20/day worked lowered Ms. Thomson in the "bid" rankings. (RDSOF 74).  Mr. McCluskey, who was bid ranked 1, would have only done 17% of his disconnects, which would put him below everyone else without the change (Exhs. VV; N, Cotton Depo at 60-65 re: McCluskey cheating). The zones were redone so Plaintiff's good portions were subdivided. (Exh N. at 62-65). Both of which Plaintiff's low bid ranking made unavailable to her.

When despite getting the dead zone, due to her Cox special project at Heritage Traditions, she improved sales, Mr. Williams complained that she was doing unethical sales. (PSOF 25). Other teams did not bid or use the CLR Handbook.[7]

Also, Keith Demarest, who also had spoken up about unpaid overtime had his entire zone taken (RDSOF 77, Exh.MM; P's Exh. 5 at 41:14-42:8). This is a series of extreme, systematic, retaliatory actions designed to sooner or later result in Ms. Thomson's termination. As noted in **Martin v. Gates**, 2008 WL 4657807 (D. Haw. Oct. 20, 2008) at III. Standards. Analysis B noting, as emphasized in **Burlington**, *supra* context matters.

---

[6]The Secretary of Labor in **Kasten v. St. Gobain Performance Plastics Corp.**, 570 F.3d 834 (7th Cir.) took the position that any raising of the issue of a violation of the FLSA is protected activity. **Kasten**, relied on by Cox is inapplicable as there is Ninth Circuit law on point.

[7]Mr. Williams affidavit is false and directly contradicted by D's Exh.8, Evans affidavit.  Mr. Evans, a Team Leader, says his team did not use the Handbook. The third team did not bid zones. (Exh. S).

### C. CONTEXT OF ADVERSE ACTIONS

Ms. Thomson was sickened, anxious, upset, humiliated and embarrassed by being called a "fucking bitch." The change to the dead zone caused her to be extremely anxious about her job. She repeatedly went to management with these issues that telling them it was easier to terminate her for poor performance than it was for raising protected issues (PSOF 12-15, P's Exh. 1 Depo Exh. 13; D's Exhs. 15, 23; Exh. BB). There was never any response to these. She raised that she might go back to her prior position in the field. Cox characterizes that as a "threat" (DSOF 23). Williams complaint about unethical sales is pure retaliation. Williams's email 1/3/07 is entitled "Unethical Sales Practices Field Loyalty term summary 7-6." *Infra* p. 7-8. (D. Exh. 18)

### D. IRREGULAR QAA's ARE ADVERSE ACTIONS

Next are the QAA's. Cox admits that Ms. Thomson provided a plethora of evidence for each allegedly failed account, including photos, maps, route sheets, signed work orders, GUI records and memory recitations. (PSOF 30-34). Cox could not have honestly thought the alleged wage theft occurred. Cox photos were not discussed with or shown to Ms. Thomson before terminating her. (Exh. ZZ; Exh. 1 at 281:9).

D's Exh. 6 is the "audit sheet" which has no foundation, is redacted and illegible. It was allegedly created from some non-disclosed Cox database. (RDSOF 2, 4, 11, 55-56, 81). Cox's photos alleged as contemporaneous evidence of the alleged QAA's have embedded dates, not one of which is an alleged audits (D's Exhs. 6; 20-21; Exh. B; KK). These should not be admitted to verify the alleged audits. These alone raise issues of genuine disputed material fact.

Ms. Thomson turned in theft reports on two accounts to Mr. Acosta at Loss Prevention (RDSOF 155, Exh. KK). There is no evidence that Cox ever spoke to him. One account was outside of Plaintiff's zone. She could not have serviced it (PSOF 21). She provided exonerating pictures of her kick mark and her tags that had obviously been there and were still there at another account on 1/08/07. (Exh.

9

KK) On the route map (Exh. EE) she had designated each and every place she was to service the day she did the work. The GUI shows her pulldown for work November 20th or 21st. (Exh. Z, AA)  She provided a route list. (Exh. FF) on which she had previously marked where she had been. This list was created by Thomson from GUI's to set up her workday.

Cox's **not contemporaneous** photos are not evidence of its pedestals state in 11/2006 when Ms. Thomson was there nor on the QAA's. (RDSOF, D's Exhs. 6, 20-21; Exhs. N; ZZ; KK). A trier of fact, based on a belief that Cox's narrative was fictional and/or the photos fabricated, could find for Ms. Thomson.  ***Reeves v. Sanderson Plumbing,*** 5 U.S. 133, 147 (2000).

Cox did not follow its regular practice for audits. See fn 8. Ms. Thomson was uncharacteristically not consulted at the site for any of the alleged failed audits. The regular practice when a reconnected disconnect was found was to call the CLR to come physically out to the exact pedestal. The purpose was so he could prove he had done the work. Mr. Cotton's method of proof was to leave a tag at the bottom of the pedestal which as he said "covered his backside". Ms. Thomson's method of proof that she had done the disconnects was to provide photos, taken at the time she did the work.  She took photos of nearly every job. When Ms. Thomson took the photos, she took her hand and displayed her tag. (Exh. 1, Depo Exh. 18, pictures 11, 28; PSOF 30; P's Exh. 5) In the photos by Ms. Thomson you can see her hand with three rings. (Exh. KK) The standard practice was not followed, she was never called out to the alleged audits 12/05/06, and she was on vacation for the remainder, 12/13/06 or 12/29/06.  No one can tell anything a week after an account was originally worked on.(PSOF 30; Exh. N at 75-77).  Exh. LL is a Cox audit that differs from D's Exh. 6 calling into question the reliability of Cox's evidence. A failure to follow Cox's own practice and policy infers retaliation and shifts the burden to Cox to show others were treated similarly. ***Hampton v. Borough of Tinton Falls***, 98 F.3d 107 (3rd Cir. 1996). (Exh. B Protect Activity-Adverse Action).

### E.     MS. THOMSON ASPIRING LEADER

Ms. Thomson had 11 years of accolades and exemplary performance (PSOF 16). She was given a Cox special project. (PSOF 25). She was known to her peers and supervisors as hardworking, honest, straightforward, and having a great work ethic. Her peers knew that she would never do a coffee shop disconnect (PSOF 27-28; RDSOF 51) She even received an award 12/15/06. (Exh. Y).

Cox could not have believed that she did false disconnects. It was a leap of logic for Trujillo and Williams to conclude she did not do the work even based on the necessarily truncated evidence presented to them in the short 8 hours allowed her. (Exh. KK) Both Trujillo and Williams were aware of her protected activity. (PSOF12-14; P's Exh. 1, Depo Exh. 13; Exh. B)  Cox knew that she had photos of each job.[8] (PSOF 30). There is doubt Cox reviewed any of the exonerating evidence of which she had 5 different types. (PSOF 31-33). She provided it at 6 p.m. on 1/08/07. She was fired at 9 a.m. on 1/09/07. (DSOF 169) The termination recommendation was dated six days prior-1/02/07. This shows intent to terminate regardless of her proof. (D's Exh. 19).  Neither its own photos nor the GUI records pulled support Cox.  Ms. Thomson had never even logged on to some accounts.

Mr. Williams animus is shown repeatedly starting 04/05/2006, he fully participating in all of the adverse actions. This animus must be imputed to Cox. **Poland v. Chertoff**, 494 F.3d 1174, 1181-1183 (9th Cir. 2007); **Lakeside-Scott v. Multnomali County**, 556 F.3d 797, 804 (9th Cir. 2009).

### F.     MCDONNELL DOUGLAS ANALYSIS

Even if the **McDonnell Douglas** balancing test is used, Cox is still precluded from summary judgment. **McDonnell Douglas Corp. v. Green**, 411 U.S. 792

---

[8] Cotton testified that the regular practice when a job was found inadequate by a mentor, was that the mentor called the employee. Then the employee would immediately meet the mentor on site and "prove" he or she had done the job. Cotton proved it by having a tag at the bottom of the pedestal. Ms. Thomson did it with her photos she took of every job. (PSOF 30, P's Exh. 5 at 75-77).

(1973) Basically that test is *prima facie*, business reason, pretext. The *prima facie* is given. *Infra, see* p. 2-8.[9] Cox admits Thomson engaged in protected activity (DMSJ p 2:22-23), adverse actions were taken. *Infra, see* p. 6-8.

Pretext can be shown directly by showing that retaliation more likely motivated the employer or indirectly by showing that the employer's explanation is unworthy of credence through either direct or circumstantial evidence. **Vasquez v. County of Los Angeles**, 349 F.3d 634, 641 (9th Cir. 2003); **Cochlan,** *supra.* Here Ms. Thomson has both.

### G. COX'S ADVERSE ACTION OF PREVENTING THOMSON'S EMPLOYMENT

Ms. Ormont (HR) told her that she was not eligible for rehire. (DSOF 185). An employee terminated for performing false disconnects or for coding work out as completed when it was not complete would not be allowed to work on Cox jobs if he or she is employed by a Cox contractor (DSOF 188). 50% to 60% of Cox's installation work is completed by contractors. (D's Exh. 35, Robberts ¶¶ 16-17).

Cox contends that when a contractor receives a job application from a former Cox employee, that it contacts Cox to determine if the employee is on a "no route" list. (DSOF 189). There is no foundation or explanation given of what a "no route" list is (D's Exh. 10, Newham; D's Exh. 35, Robberts). Cox contends than an inquiry would be directed to four specific individuals within HR and that a judgment call would be made after consultation between HR and the former manager who worked with the employees group. (DSOF 190). If these are taken as true for purposes of summary judgment, a contractor would be told negative things about a terminated

---

[9]The D.C. Circuit position is that once Defendant presents a business reason, there is no need for the Court to explore the *prima facie* case. These rely on **St. Mary's Honor Ctr v. Hicks**, 509 US 502, 113 S. Ct 2742 (1993); **Brady v. Office of Sergeant of Arms**, 520 F.3d 490, 493 (D.C. Cir. 2008). **Jones v. Bernanke**, 557 F.3d 670, 678 (D.C, Cir. 2009)(At this stage of litigation asking whether Plaintiff has satisfied the *prima facie* burden is an <u>unnecessary</u> and <u>improper "sideshow."</u>) This approach is logical, it saves time, money and endless judicial time.

employee at least three different stages.

Also, a letter from Cox Arizona UI Program disseminated false allegations about Ms. Thomson. (D's Exh. 29).

Cox provides extremely strong circumstantial evidence as genuine undisputed material facts, that Ms. Thomson has been put on a do not hire list (DSOF 192-208). She applied for a position at End to End (DSOF 192) which performs contract work for Cox. End to End had to check with Cox to see if she was in unhireable status, she was. (DSOF 193-196).

Plaintiff applied for positions with other Cox contractors, Sunshine Installations, Cable Enterprises, Micor and TriWare Communications. Sunshine Installations and Cable Enterprises told her that they would check with Cox. Neither hired her. (DSOF 198-202).

Steve told Ms. Thomson that Cox told Micor that she could not have any access to Cox systems or customers (DSOF 202-205). This scenario is confirmed by Mr. Newham's affidavit (D's Exh. 10; DSOF 188), an employee fired for the reasons Cox gives for Ms. Thomson could not work on a Cox job. Mr. Croner at TriWire told Plaintiff that she was in an unhireable status with Cox (DSOF 208). Cox contractors don't do other work. (Exh. ZZ).

Cox's facts admitted by Thomson constitute extremely strong circumstantial evidence that it did interfere, blackball and defame her (DSOF 192-208), and at the held to the standard in DSOF 188. Circumstantial evidence shows Cox contractors talked to Cox and told Plaintiff exactly what Cox's policy was as recited in DSOF 188. Cox has the audacity to argue their own DSOF facts 192-208 are inadmissible. Cox's action of designating them genuine material undisputed facts waives any objection.  (FRCP 56, L.R.Civ 56.1)  Further, this type of evidence can be testified to by one or more employees at five or six companies at trial.

**VI.    COX RELIES ON CONTRADICTORY, INACCURATE EVIDENCE**

Cox repeatedly refers to D's Exhs. 20-21 as photographs taken the day of the

13

QAA's, but no date stamp on any photo is an audit date. (D.'s Exhs. 6, 20-21; Exh. KK). Ormont's notes show repeated questions about "We haven't ever done this to anyone else?" a note that someone else was not similarly situated (D's Exh. 23, COX0580).  Cox claimed to the EEOC that there were three similarly situated men (Exh RR).

Dolezal's affidavit is simply untrue (D's Exh. 13; RDSOF 51; Exh. EE-MM). Ms. Thomson's evaluations when she worked with him show she was a superior employee, worked independently, and received accolades. Thus, it is simply false to say that she was as "sub-par employee," "difficult to manage," or took too much time (RDSOF 51; PSOF 16; Exhs. C-M).

Undisputed evidence shows the verbal attack (PSOF 12-14; DSOF 114, 118) however, despite this Williams' affidavit does not address it and Cox's Answer denies it.

The audit findings, D's Exh. 6, although without foundation, show that every time Ms. Thomson complained about unpaid overtime, she failed an audit (Exh. B).

She couldn't meet with Cox's FLSA inquiry team from headquarters in Atlanta. So in early December she met with Widhalm and Ormont on FLSA issues.  Notes taken were not produced. (Exh. XX; ZZ). They assured her protection, but when she was on vacation immediately afterward she suddenly failed numerous audits.

The discrepancies of Cox's pictures, practices, leaps of logic, internal inconsistencies and contradictions in Cox documents preclude summary judgment.

Cox has repeatedly avoided or refused to produce relevant documents, or electronic data. Cox denies knowledge of commonly used terms at Cox.

Cox was asked for documents at the first DES hearing, it came to the second hearing without them. No Cox representative nor the documents appeared at the third. There is evidence Cox never withdrew the appeal. (P's Exh. 2; Exh. ZZ).

Plaintiff in this case propounded a focused and limited Request for the Production of Documents and Things.(Exh. XX). The Request, a mere 22

14

paragraphs, and paragraph 20 a simple and narrow request:

> GUI records of anyone's log onto the 17 audited accounts of Sheila Thomson between November 1, 2006 and December 31, 2006.

These GUI log-ins would show if Ms. Thomson had checked in on any of these 17 accounts, representing the alleged basis for the termination. Cox's Response is:

> Defendant objects to the Request because the Request is vague and ambiguous in its use of undefined terms" GUI "and " seventeen audited accounts. . .

Astonishingly, Cox's very same objecting attorney, Ms. Shivers states:

Q. Ms. Shivers "and I know what GUI logs are." (Exh. 1 at 387:2-6). The deposition has 9 references to GUI's computer records.

Cox introduced these "vague and unambiguous" audit spreadsheet regarding these very same audits. (Exh. 1 at 259:34, Depo Exh.15,). The term audit(s) is used on 18 different pages of Ms. Thomson's deposition.

## VII. PUNITIVE DAMAGES FOR RETALIATION

FLSA must be interpreted broadly. The FLSA has a remedial and humanitarian purpose. "Such a statute must not be interpreted or applied in a narrow, grudging manner." ***Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123***, 321 U.S. 590, 597, 64 S. Ct. 698 (1944).

Punitive damages are clearly available for retaliation under the FLSA. ***Lambert,*** *supra*. The Ninth Circuit acting *en banc* in ***Ackerly***, held that it did not have to reach the issue of punitives but found ***Travis v. Gary Comm. Mental Health Ctr. Inc.***, 921 F.2d 108 (7th Cir. 1990) persuasive. ***Travis*** found that punitive damages were available. ***Travis*** noted the statute provides legal and equitable relief "without limitation" *Id.* 111-112. Cox's case, ***Tumulty v. FedEx***, 2005 WL 197901, is unpublished, not precedential, and was followed by two further decisions and an appeal. See 2007 WL 896035; (WD Wash, Mar 22, 2007). ***Ackerly*** itself upheld an award of $4 million in punitive damages.

## IX. STANDARD OF REVIEW

1
2
3
4
5
6
7
8
9
10

Summary judgment is prohibited where, as here, there are material genuine disputed facts. This Court should not and must not weigh or make conclusions of fact that should be left for the jury. Summary judgment in employment cases is rare because intent is always a question of fact. **Yartzoff v. Thomas**, 809 F.2d 1371, 1377 (9th Cir. 1987). Here, there is absolute proof that a trier of fact, when presented with the evidence, could decide in Ms. Thomson's favor. Cox contested Ms. Thomson's unemployment; the hearing officer found that she had not been terminated for misconduct. (Exh. TT). This finding should come in for this purpose on a motion for summary judgment and to show that Cox could not have believed its pretextual reason.

11
12
13
14
15

This Court is asked to grant summary judgment in favor of the Cox on a record of 209 allegedly material, genuine undisputed facts.[10] If all are material, then the supported contradiction of any one of them should be sufficient to defeat summary judgment. Fortunately, we are not faced with that situation. Ms. Thomson has provided direct and indirect evidence which supports her claims and disputes Cox's alleged facts. See RDSOF, PSOF.

16
17
18

It is difficult in responding succinctly to facts which are cobbled together, compound, taken out of context, and shaded. This emphasizes the necessity for a trier of fact.

19
20
21

> The requisite degree of proof necessary to establish a *prima facie* case for Title VII. . . on summary judgment is minimal and does not even need to rise to the level of preponderance of the evidence." **Cordova v. State Farm Insurance Company**, 124 F.3d 1145, 1148 (9th Cir. 1997). (citation omitted).

22
23
24

The Plaintiff's burden is to raise genuine disputed material facts which, if believed by the trier of fact, would allow it to find in Plaintiff's favor. Plaintiff does not have to prove her entire case at summary judgment.

25
26

The Court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and the weight of evidence. **Masson v. New Yorker**

27
28

---

[10] Ms. Thomson has submitted her own MSJ based on 43 SOF's.

16

***Magazine, Inc.***, 501 U.S. 496, 520, 111 S.Ct. 2419 (1992); ***Godwin v. Hunt, Inc.***, 150 F.3d 1217 (9th Cir. 1988). The Court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. ***T.W. Elec. Serv. v. Pac Elec. Contractors***, 809 F.2d 626, 631 (9th Cir. 1987).

> An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law governing the case. ***Martin v. Gates***, 2008 WL 4657807 (D. Haw. Oct. 20, 2008) at III. Standards

DSOF' s do not meet that criteria.

Cox bears the initial burden of providing a legal basis for its motion and identifying those portions of the record which demonstrate <u>the absence of a genuine issue of material fact</u>. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23 (1986); ***Jessinger V. Nav.Fed. Credit Union***, 24 F.3d 1127, 1130 (9th Cir. 1994). Here, Cox has not recited the law accurately, nor has it borne its burden of setting forth specific facts showing that there is no genuine issue of material fact for trial.

## IX. CONCLUSION

This Court need only find genuine issues of material fact to deny Cox's motion. Indeed, the most reasonable inference to draw from the contradictions and inconsistencies manifested throughout DSOF's and purported "evidence" is that the very documents on which Cox relies were fabricated for use in justifying its unlawful conduct or the result of an effort to obscure facts. But regardless of whether those facially obvious obfuscation are the result of intentional fabrication, or merely the result of bumbling ineptitude or "inadvertent error," they conclusively confirm the existence of genuine issues of material facts that preclude Summary Judgment.

RESPECTFULLY SUBMITTED THIS 29th day of January, 2010.

CHERI L. McCRACKEN, ESQ.

/S/ Cheri L. McCracken
Cheri L. McCracken
2402 North 24th Street
Phoenix, AZ 85008
Attorney for Complainant

1  Original of the foregoing e-filed
   this 29th day of January, 2010 with:

2  Clerk of the US District Court
   400 W. Washington
3  Phoenix, AZ 85003-0001

4  /s/ FranTownsend