WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Sheila C. Campbell-Thomson, | ) | No. CV-08-1656-PHX-GMS |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Cox Communications, | ) | |
| Defendant. | ) | |

Pending before the Court are the parties' competing motions for summary judgment. (Dkt. ## 40, 42.) As set forth below, the Motion of Plaintiff Sheila C. Campbell-Thompson ("Plaintiff") is denied and the Motion of Defendant Cox Communications ("Cox" or the "Company") is granted in part and denied in part.[1]

**BACKGROUND**

Plaintiff began working for Cox in June 1996 as a Field Service Representative. (Dkt. # 52 at ¶ 1.) In September 2005, Plaintiff voluntarily transferred from the Field Operations Department to work in Cox's Sales Department as a Customer Loyalty Representative ("CLR"). (*Id.* at ¶ 2.) Shortly after Plaintiff joined the Sales Department, she began to complain to her supervisors and to Human Resources that she was required to work overtime

---

[1] The parties' requests for oral argument are denied as the Court has determined that oral argument will not aid in its decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

hours without commensurate compensation. (*See* Dkt. # 52.) After management failed to take action, Plaintiff filed a formal complaint with the United States Department of Labor, asserting that the Company denied overtime compensation to CLRs. (*Id.* at ¶ 128.) Ultimately, Plaintiff recovered $3,599.55 in unpaid overtime wages from Cox. (*Id.* at ¶ 182.)

As a member of the Sales Department, Plaintiff was responsible for contacting Cox customers who were dissatisfied with their internet and cable services and for attempting to persuade them to retain these services. (*Id.* at ¶13.) When customers decided to cancel, Plaintiff was responsible for disconnecting their service and retrieving Cox's equipment, if necessary, from the customers' property. (*Id.* at ¶ 14.) Each CLR was also assigned a specific geographic zone in which he or she worked to "save" dissatisfied customers, solicit sales, and disconnect services. (*See id.*) During her time as a CLR in the Sales Department, Plaintiff reported to Ray Williams, her team leader. (*Id.* at ¶ 7.) Mr. Williams in turn reported to Lenny Trujillo, the Area Team Manager for the Sales Department.

Approximately six months after Plaintiff became a CLR, she and her fellow CLRs attended a team meeting with Mr. Williams. (Dkt. # 52 at ¶ 111.) During this meeting, Mr. Williams apparently became upset and "screamed" at the CLRs for their failure to comply with new scheduling guidelines that had been implemented in March 2006. (*Id.* at ¶ 114.) The CLRs, including Plaintiff, were concerned that the new scheduling guidelines were too demanding and required them to work as many as fifteen hours a day without overtime pay. (*Id.* at ¶¶ 114–117.) When Plaintiff voiced her concerns about the lack of overtime compensation, Mr. Williams responded by calling her a "f*****g b***h." (*Id.* at ¶ 117.) After Mr. Williams made this comment, Plaintiff promptly left the meeting and vomited in an employee restroom. (*Id.*; Dkt. # 43 at ¶ 13.) Mr. Williams then stated to those present at the meeting that Plaintiff "should be f*****g fired for walking out of the meeting." (Dkt. # 52 at ¶ # 119.)

A few weeks after this meeting, Mr. Williams announced that he was in the process of reconfiguring and reassigning his team's geographic work zones. (*Id.* at ¶ 74.) According to Cox, Mr. Williams, with the help of three CLRs, decided to change the boundaries of the

team's eleven geographic work zones to more evenly distribute workload and to maximize potential revenue. (*Id.* at ¶¶ 81–82.)[2] Once the geography of the new zones was decided upon, each CLR was allowed to bid on the work zone he or she desired. (*Id.* at ¶ 74.) The bidding order was determined by "a stacked ranking of each CLR's sales, saves[,] and disconnects." (*Id.*) Based on her ranking, seven CLRs bid before Plaintiff, and three or four bid after her. (*Id.* at ¶ 93.) And though Plaintiff had the choice of three to four other zones, including a geographically contiguous zone, she ultimately selected a non-contiguous geographic zone that included parts of Phoenix and Scottsdale. (*Id.* at ¶ 94–95.)

Shortly after selecting her zone, Plaintiff began to complain that she was assigned to a "dead zone" because it contained a large number of apartment complexes, low-income housing, and winter residents. (*Id.* at ¶ 98.) Nonetheless, in spite of these challenges, Plaintiff's sales statistics improved in her new zone, and her bid ranking rose when the team rebid in July 2009, just ninety days after the first bid. (*Id.* at ¶ 104–105.) Where Plaintiff was near the bottom of the bidding order in April, she was now ranked toward the middle of the list. (*Id.* at ¶ 105.) During the second bid, Plaintiff had the choice of at least six other zones, including more affluent and geographically contiguous areas; nevertheless, Plaintiff selected the same non-contiguous geographic zone that she selected during the first bid. (*Id.*) In her Complaint, Plaintiff alleges that she was "assigned" this work zone in a deliberate attempt to limit her productivity and to provide Cox with a reason to fire her. (*See* Dkt. # 1 at ¶ 10.)

---

[2]Plaintiff raises the best evidence rule in objection to Cox's evidence regarding the nature of the geographic zones. (Dkt. # 52 at ¶¶ 76, 81, 97.) Plaintiff's objection, however, is premised on a misunderstanding of the rule. *See United States v. Gonzales-Benitez*, 537 F.2d 1051, 1053–54 (9th Cir. 1976) (holding that the best evidence "rule [is] applicable only when one seeks to prove the contents of documents or recordings") (citing Fed. R. Evid. 1002). While Plaintiff asserts that the best evidence rule requires Cox to submit a map of each zone, the contents of a map are not at issue. *See id.* Instead, the relevant factual inquiry concerns the configuration of the geographic zones. Testimony from those who configured and who are familiar with the geographic zones is therefore admissible to establish the nature of these zones. *See id.*

Plaintiff also asserts that Cox denied her request to transfer from the Sales Department based on her complaints regarding overtime. From April to September of 2006, Plaintiff made several requests to transfer back to the Field Operations Department. (Dkt. # 52 ¶ 41.) The transfer was rejected, however, because Cox's internal policy requires that employees work in their current position for a minimum of twelve months in order to be eligible to apply for an internal transfer. (*Id.* at ¶ 38) The only exception to the twelve month minimum requires an employee to obtain approval from his or her current department as well as from the department into which the employee desires to transfer. (*Id.* at ¶ 39.) According to Cox, the Sales Department consented to a possible transfer, but the Field Operations Department denied Plaintiff's request because the Department was overstaffed and because the managers of Field Operations, Frank LaSpisa and John Dolezal, felt that Plaintiff was unable to perform the requirements of the position due to her health. (Dkt. # 41 at 49.) Cox further presents evidence that Mr. LaSpisa and Mr. Dolezal were unaware of Plaintiff's overtime complaints when they denied the transfer. (*See id.* at ¶¶ 10–12.)

Shortly after Plaintiff's transfer request was denied, Mr. Williams became concerned that Plaintiff had performed "false disconnects" in her zone. (Dkt. # 52 at ¶ 146.) A false disconnect occurs when a CLR certifies that he or she disconnected a customer's cancelled service, but fails to actually do so. Because CLRs are paid a commission for disconnecting cancelled services, Cox considers performing false disconnects to be a terminable offense. (*Id.* at ¶ 134.) According to Cox, a December 2006 internal audit revealed that Plaintiff had coded several customer accounts as disconnected even though it was discovered that these accounts were still connected to Cox's services. (*Id.* at ¶ 146.) Plaintiff, however, asserts that she never performed any false disconnects and that it was not uncommon for a CLR to disconnect a customer's service only to have that customer illegally reconnect and steal services. (*Id.* at ¶ 134.) On January 8, 2007 Mr. Williams and Mr. Trujillo met with Plaintiff to discuss the alleged false disconnects. (*Id* at ¶ 152.) They also showed her documentary evidence demonstrating that the supposedly disconnected accounts were still active. (*Id.*) When Plaintiff attested that she had documentary evidence demonstrating that she performed

the disconnects in question, Mr. Williams and Trujillo gave her until 6:00 p.m. that day to present the exonerating evidence. (*Id.* at ¶ 153.) And while Plaintiff presented "route sheets, signed work orders, pictures, [and] apartment maps" showing that she actually performed the work, Cox relied on the internal audit and terminated Plaintiff the next morning. (*Id.* at ¶¶ 156, 160, 161, 164.) According to Plaintiff, Cox fabricated the audits as an excuse to fire her.

Following her termination from Cox, the Company told Plaintiff that she was not eligible for rehire because she was fired for committing fraud. (Dkt. # 52 at ¶ 185.) Given her employment experience, Plaintiff decided to apply for positions with five other telecommunications companies in the Phoenix area: End2End Communications, Sunshine Communications, Cable Enterprises, Micor, and TriWire Communications. (Dkt. # 52 at ¶¶ 192, 197, 200, 203, 207.) Each of these prospective employers, however, rejected Plaintiff's application. (*Id.*) According to Plaintiff, these employers were unlawfully influenced by Cox, who allegedly told the employers that Plaintiff was ineligible for rehire. (*See id.*) Plaintiff further asserts that Cox unlawfully listed her as ineligible for rehire because Mr. Williams allegedly knew that Plaintiff never falsified any disconnects. (*See* Dkt. # 51.)

Plaintiff now claims that her complaints regarding overtime compensation led the Company to take several actions that materially impacted her employment. (Dkt. # 1.) Specifically, Plaintiff alleges that Cox violated the retaliation provisions of the Fair Labor Standards Act, 29 U.S.C. 215 ("FLSA"). (Dkt. # 1.) She also complains that the Company unlawfully interfered with contractual relations between Plaintiff and prospective employers following her termination from Cox. (*Id.*) On December 4, 2009, Plaintiff and Cox filed competing Motions for Summary Judgment on these claims. (Dkt. ## 40, 42.)

### LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law determines which facts are material[] and "[o]nly disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, need not disprove matters on which the opponent has the burden of proof at trial. *Id.* at 323. In such cases, the burden is on the nonmoving party to establish a genuine issue of material fact. *Id.* at 322–23. The nonmoving party "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## DISCUSSION

Genuine issues of material fact preclude summary judgment on Plaintiff's FLSA claim to the extent that Plaintiff asserts that Cox terminated her in violation of the Statute and that Cox told prospective employers, without a good faith basis, that she was ineligible for rehire. Genuine issues of material fact also preclude summary judgment on Plaintiff's tortious interference with contractual relations claim.

**I.  Plaintiff's Retaliation Claim**

**A. Legal Framework for FLSA Retaliation Claims**

Under the FLSA, employers are required to pay eligible "employees one and one-half times their regular rates of pay" when those employees work overtime hours. *See Mamola v. Group Mfg. Servs. Inc.*, 2010 WL 1433491, at *11 (D. Ariz. April 9, 2010) (citing *Ogden v. CDI Corp.*, 2009 WL 4508502, at *1 (D. Ariz. Dec. 1, 2009)). The FLSA further makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding

under or related to this chapter." 29 U.S.C. § 215(a)(3). Claims for retaliation under this provision are subject to the burden-shifting analysis applied under Title VII of the Civil Rights Act or 1964, 42 U.S.C. 2000e-7 ("Title VII"). *See Spata v. Smith's Food & Drug Ctrs., Inc.*, 253 F. App'x 648, 649 (9th Cir. 2007); *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997).[3]

Under this burden shifting approach, a plaintiff must first set forth a prima facie case of retaliation. *See E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 303 F.3d 994, 1004–05 (9th Cir. 2002); *Spata*, 253 F. App'x at 649. This requires the plaintiff to show (1) that she engaged in protected activity, (2) that she suffered a materially adverse employment action, and (3) a causal connection between the two. *Luce*, 303 F.3d at 1005; *see Surrell v. Cal. Water Serv.*, 518 F.3d 1097, 1108 (9th Cir. 2008). An employee engages in a protected activity when she participates in conduct that reasonably could be perceived as directed toward the assertion of rights protected by the statute. *See Lambert v. Ackerley*, 180 F.3d 997, 1004 (9th Cir. 1999) (en banc), *cert. denied*, 528 U.S. 1116 (2000). Such conduct not only includes formal complaints with a court or the Department of Labor, but also informal complaints to an employer. *See Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1151 (9th Cir. 2000) (citation omitted). An employment action is cognizable as adverse when "it is reasonably likely to deter employees from engaging in protected activity." *See Ray v.*

---

[3]Plaintiff also contends that she can prove retaliation using the Supreme Court's "mixed-motive" test set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). Even assuming the *Price Waterhouse* test is viable in the context of the FLSA, it not applicable in this case because Plaintiff "has not come forward with direct evidence of causation." *See Pearson v. City of Big Lake, Minn.*, ___ F. Supp.2d ___, 2010 WL 681847, at *26 n. 3 (D. Minn. 2010). While Mr. William's offensive remarks following Plaintiff's complaint about overtime pay arguably constitute "'direct evidence of [a] retaliatory motive,'" such evidence "is insufficient to trigger *Price Waterhouse*." *See id.* (quoting *Conner v. Schnuck Mkts., Inc.*, 906 F. Supp. 606, 612 (D. Kan. 1995) (observing that direct evidence of causation, rather than direct evidence of discriminatory animus, is necessary to trigger the "mixed-motive test"), *aff'd*, 121 F.3d 1390 (10th Cir. 1997)); *cf. Price Waterhouse*, 490 U.S. at 257 (holding that "mixed motive" analysis is only available when an employee brings forth "direct evidence" that participation in a protected activity "contributed" to the adverse employment decision).

1 *Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). The causal link at the prima facie stage is
2 construed broadly; a plaintiff must merely "prove that the protected activity and the negative
3 employment action are not completely unrelated." *See Poland v. Chertoff*, 494 F.3d 1174,
4 1181 n. 2 (9th Cir. 2007).

5 Once a plaintiff establishes her *prima facie* case, the burden shifts to the employer to
6 articulate a legitimate explanation for its decision that is non-retaliatory. *See Steiner v.
7 Showboat Operating Co.*, 25 F.3d 1459, 1464–65 (citations omitted); *see also Spata*, 253 F.
8 App'x at 649. To meet this burden, "the employer need only produce admissible evidence
9 which would allow the trier of fact rationally to conclude that the employment decision had
10 not been motivated by [retaliatory] animus." *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450
11 U.S. 248, 257 (1981); *see also Steiner*, 25 F.3d at 1464–65 (applying this standard in the
12 context of a retaliation claim).

13 If the employer satisfactorily sets forth a legitimate explanation for its employment
14 decision, the burden then shifts back to the plaintiff to present evidence that the employer's
15 reason is pretext for retaliation. *See Steiner*, 25 F.3d at 1464–65 (holding that a plaintiff "has
16 the ultimate burden of showing that [defendant's] proffered reasons are pretextual"); *see also
17 Spata*, 253 F. App'x at 649. To demonstrate pretext, a plaintiff must show that a retaliatory
18 "reason more likely motivated the employer," or "that the employer's proffered explanation
19 is unworthy of credence." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir.
20 2002). To show that an employer was more likely motivated by a discriminatory or
21 retaliatory motive, a plaintiff must present direct or circumstantial evidence of the employer's
22 allegedly illegal motive. *See id.* "[V]ery little evidence," however, "is necessary to raise a
23 genuine issue of fact regarding an employer's motive; any indication of [an improper] motive
24 . . . may suffice to raise a question that can only be resolved by a fact-finder." *McGinest v.
25 GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004) (internal quotations and citations
26 omitted). "To satisfy the unworthy of credence test, a plaintiff must identify specific
27 inconsistencies, contradictions, implausibilities, or weaknesses in the employer's explanation
28 so that a reasonable fact finder could infer that the employer did not act for the asserted

reason. *See Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005); *see also Hernandez v. Arizona*, ___ F. Supp.2d ___, 2010 WL 1193727, at *9 (D. Ariz. 2010); *Mamola*, 2010 WL 1433491, at *6. Where the parties rely on circumstantial evidence of pretext, that evidence must be sufficiently "specific and substantial" to "raise a genuine issue of material fact under Rule 56(c)." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029 (9th Cir. 2006).

### B. Analysis: Genuine Issues of Material Fact Preclude Summary Judgment with Respect to Some Aspects of Plaintiff's FLSA Retaliation Claim.

Plaintiff asserts that Cox retaliated against her for raising concerns about overtime compensation. Specifically, Plaintiff claims that Cox's conduct was retaliatory on five occasions: When (1) Mr. Williams called Plaintiff a derogatory name and threatened to fire her; (2) Mr. Williams assigned Plaintiff to a non-contiguous and unproductive work zone; (3) Cox managers denied Plaintiff's request to transfer back to the Field Operations Department; (4) Mr. Williams and his team conducted "false audits" of Plaintiff's work and terminated her employment; and (5) Cox told prospective employers that Plaintiff was not eligible for rehire. (Dkt. # 52 at 5.) Under the burden-shifting test for retaliation, Plaintiff's fourth and fifth claims withstand summary judgment.

#### (1) Mr. William's Offensive Comment and Threat to Plaintiff

Plaintiff first presents evidence that a member of Cox's management team called her an offensive name and later threatened to terminate her. (Dkt. ## 40, 42.) These facts, however, are insufficient to set forth a prima facie case of retaliation because derogatory comments and unfulfilled threats are not adverse employment actions under the FLSA.

Under employment statutes such as the FLSA, snide remarks, increased criticism, offensive utterances, and derogatory statements do not constitute adverse employment actions. *Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1189 (9th Cir. 2005) *amended by* 433 F.3d 672 (2006), *and* 436 F.3d 1050 (2006); *see Nunez v. City of L.A.*, 147 F.3d 867, 875 (9th Cir. 1998) (holding that "harsh words" and "badmouthing" are insufficient to constitute an adverse employment action); *Davis v. Verizon Wireless*, 389 F. Supp.2d 458, 478 (W.D. N.Y.

2005) (holding that "name calling" does not constitute an adverse employment action as required to establish a retaliation claim); *cf. Fry v. Am. Italian Pasta Co.*, 2007 WL 1113673, at *4 (D. S.C. 2007) (granting summary judgment in favor of an employer who called the plaintiff a "stupid f*****g b***h" because the comment "was not sufficiently severe or pervasive" under Title VII).

Similarly, Plaintiff's evidence that Mr. Williams wanted to terminate her for making "unethical sales" is insufficient to raise a FLSA retaliation claim. (Dkt. # 51 at 6.) As the Ninth Circuit has repeatedly reiterated, "the mere threat of termination does not constitute an adverse employment action." *Hellman v. Weisberg*, 2009 WL 5033643, at *2 (9th Cir. Dec. 23, 2009) (citing *Hardage*, 427 F.3d at 1189 (holding that thinly veiled threats were not enough to constitute retaliation under Title VII)); *see Nunez*, 147 F.3d at 875 (9th Cir. 1998) (holding that verbal threats do not meet the adverse employment action element); *see also Heilman-Asmus v. Young*, 7 F. App'x 694, 695 (9th Cir. 2001) ("[I]solated instances of unfulfilled threats . . . cannot be construed as adverse employment actions."). Further, to the extent that a verbal threat could be an adverse employment action, Plaintiff fails to explain why, under the circumstances of this case, a reasonable employee would have been deterred from engaging in protected activity based on Mr. William's threat to terminate Plaintiff for making unethical sales. A threat to terminate an employee for reasons unrelated to the employee's protected conduct does not constitute an adverse employment decision. *See D'Andrea v. Univ. of Haw.*, ___ F. Supp.2d ___, 2010 WL 651593, at *8 (D. Haw. 2010) (implying that a threat must relate to the employee's protected activity to rise to the level of an adverse employment action); *see also Hardage*, 427 F.3d at 1189 (holding that threats are not adverse employment actions). Accordingly, to the extent the parties seek summary judgment on this issue, Plaintiff's Motion is denied and Cox's is granted.

### (2) Plaintiff's Non-Contiguous Work Zone

The Court also grants summary judgment in Cox's favor on Plaintiff's claim that she was retaliated against when Mr. Williams assigned her to a non-contiguous work zone. The undisputed facts demonstrate that Plaintiff was never assigned to this work zone, but that she

selected this work zone herself. (Dkt. # 52 at ¶ 94–95.) When Cox reconfigured the work zones for the CLRs in the Sales Department in April 2006, each CLR was allowed to bid on the work zone he or she desired. (*Id.* at ¶ 74.) The bidding order was determined by "a stacked ranking of each CLR's sales, saves[,] and disconnects." (*Id.*) Though this objective ranking put Plaintiff near the bottom of the bid, she still had the choice of three to four other zones, including an affluent and geographically contiguous zone. (*Id.* at ¶¶ 94–95.) Plaintiff, however, selected a work zone that she later dubbed the "dead zone." (*Id.* at ¶ 98.) She again selected the same zone, even though she had the choice of several additional work areas, when the Sales Department rebid in July 2006.

Plaintiff alleges that Cox intentionally assigned her to a "gerrymandered non-contiguous" work zone (s*ee* Dkt. # 51 at ¶ 5.); however, the record is devoid of any evidence to support this allegation. There is nothing in the record suggesting that the reconfiguration was targeted at Plaintiff. *See Weger v. City of Ladue*, 500 F.3d 710, 726–27 (8th Cir. 2008) (rejecting a plaintiff's Title VII claim where the employer's allegedly adverse employment policy "affect[ed] all or substantially all of its employees in the same manner"). There also is no evidence that the "stacked rankings" were somehow unobjective or calculated to impair Plaintiff's bid position—all of the CLRs were subject to the same formula for determining bidding order. *See id.* Accordingly, any causal connection between Plaintiff's protected activity and her assignment to the work area is severed by the undisputed fact that Plaintiff, not Cox, selected her assignment. *See Luce*, 303 F.3d at 1005 (holding that a prima facie case for retaliation requires evidence of a causal connection between the plaintiff's protected activity and the employer's adverse employment decision).[4]

---

[4] In her Response to Defendant's Motion, Plaintiff also asserts that Cox retaliated against her when Mr. Trujillo, the area team leader, failed to assist her after she complained about her geographic work zone. This claim fails, however, because she does not present any evidence of actions that Mr. Trujillo failed to take to address her complaint and she does not explain what assistance was requested. *See Roley v. New World Pictures*, 19 F.3d 479, 482 (9th Cir. 1994) (noting that a party's naked allegations and speculation are insufficient to create a genuine issue of material fact and withstand summary judgment). She also fails to

### (3) Denial of Plaintiff's Requested Transfer Back to the Field Operations Department

The Court next rejects Plaintiff's argument that Cox retaliated against her by denying her transfer back to the Field Operations Department. Here, Plaintiff fails to establish her prima facie case of retaliation because there is no evidence of a causal connection between Plaintiff's protected activity and Cox's decision to deny the transfer. Even if Plaintiff had set forth a prima facie case, she fails to show that Cox's legitimate reason for denying the transfer was pretext for retaliation.

First, there is no evidence of a causal connection between Plaintiff's complaints regarding overtime pay and Cox's refusal to deny Plaintiff's requested transfer to the Field Operations Department. Instead, Defendants present undisputed affidavit evidence indicating that Mr. Dolezal and Mr. LaSpisa, the managers who denied the transfer, were unaware of Plaintiff's complaints regarding the Sales Department's failure to pay overtime compensation. (*See* Dkt. # 41 at ¶¶ 10–12.) Absent such awareness, Plaintiff cannot demonstrate the requisite causal connection to overcome summary judgment. *See Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (9th Cir. 1997) ("In order to satisfy the 'causal link' prong of a prima facie retaliation case, a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action.") (citing *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993)). While Plaintiff alleges that the Field Operations Department must have been aware of her complaints, she provides no admissible evidence to support this allegation. (*See* Dkt. # 52 at ¶ 52.) Rather, Plaintiff cites an email from one member of Cox's Human Resources Department to another member of that Department. (*See* Dkt. # 41, Ex. 12 at 756–757.) This email does not even remotely suggest that personnel in the Field Operations Department were aware of Plaintiff's complaints. (*Id.*) While the email pertains to Plaintiff's transfer request, it does not mention her complaints regarding Cox's

---

explain how Mr. Trujillo's failure to help her was related to her complaints regarding overtime.

- 12 -

failure to pay overtime wages. (*See id.*) Because Plaintiff fails to carry her burden of setting forth evidence of causation, summary judgment is appropriate on this claim in Cox's favor. *See* Fed. R. Civ. P. 56(e) (noting that the parties' allegations are insufficient to defeat summary judgment).

Further, even if Plaintiff had set forth a causal connection, the record indicates that the Field Operations Department had a legitimate non-retaliatory reason for denying Plaintiff's transfer. Cox's internal policy required Plaintiff to work in her position in Sales for a minimum of twelve months to be eligible for an internal transfer. (Dkt. # 52 at ¶ 38.) Plaintiff began working in the Sales Department on September 25, 2005. Unhappy with this new position, however, Plaintiff subsequently made multiple requests to transfer back to the Field Operations Department between April and early September of 2006. (*Id.* at ¶ 41.) Because this time frame indicates that Plaintiff had worked in Sales for less than a year when she requested the transfer, the only exception to Cox's policy required her to obtain approval from both Sales and Field Operations. (*Id.* at ¶ 39.) The Sales Department granted the request; however, the Field Operations Department denied the request because it was overstaffed. (Dkt. # 41 at ¶ 49.) Plaintiff does not dispute that Field Operations was overstaffed. (*See* Dkt. # 52 at ¶ 49.) She further fails to present facts suggesting that a "retaliatory motive" more likely influenced the Field Operations Department's decision or that its explanation is "unworthy of credence." *See Villiarimo*, 281 F.3d at 1065. Thus, to the extent the parties seek summary judgment on this issue, Plaintiff's Motion is denied and Cox's is granted.

### (4) False Audits and Termination

The Court denies both parties' request for summary judgment on Plaintiff's claim that Cox terminated her in violation of the FLSA. With respect to this claim, neither party disputes that Plaintiff has set forth a prima facie case of retaliation. (*See* Dkt. # 64 at 9.) Summary judgment, therefore, turns on whether Cox had a legitimate non-retaliatory reason for terminating Plaintiff's employment, and if so, whether Plaintiff has brought forth sufficient evidence of pretext. *See Spata*, 253 F. App'x at 649.

Here, Cox has met its burden of articulating a legitimate non-retaliatory explanation for its employment decision because it has produced admissible evidence which would allow a reasonable fact finder to conclude that the employment decision was not motivated by retaliatory animus. *See Steiner*, 25 F.3d at 1464–65. According to Cox, a December 2006 internal audit revealed that Plaintiff had coded several customer accounts as disconnected even though it was discovered that these accounts were still connected to Cox's services. (Dkt. # 52 at ¶ 146.) Cox further attests that its managers reviewed documentary evidence showing that Plaintiff had not performed the work before the Company fired her. Because Cox presents evidence that Plaintiff committed fraud, a "trier of fact" could "rationally . . . conclude that [Cox's] employment decision" was not "motivated by [retaliatory animus]." *Burdine*, 450 U.S. at 257.

Plaintiff, however, presents sufficient evidence for the fact-finder to alternatively conclude that Cox's reason is pretext for retaliation. According to Plaintiff's affidavit, she never performed any "false disconnects." Instead, she attests that it was not out of the ordinary for a CLR to disconnect a customer's service only to have that customer illegally reconnect and steal services. (Dkt. # 52 at ¶ 134.) She further provides documentary evidence, which she presented to Mr. Trujillo and Mr. Williams shortly before they fired her, indicating that she actually performed the work in question. (*Id.* at ¶¶ 156, 160, 161, 164.)

Based on this evidence, a reasonable fact-finder could conclude that Cox did not honestly believe that it had a good faith reason for terminating Plaintiff's employment. In judging whether a proffered reason is pretextual, an employer need only show that it "honestly believed its reason for its actions, even if its reason is 'foolish or trivial or even baseless.'" *Villiarimo*, 281 F.3d at 1063 (9th Cir. 2002) (quotation omitted). In other words, it is not important whether the proffered justification is objectively false—only that Cox honestly believed its reasons for its actions. *See id.* Nonetheless, given that Plaintiff presented her employer with evidence that arguably exonerated her, a reasonable fact finder could conclude that Cox did not believe its actions were justified. Further, given that Mr. Williams made derogatory comments about Plaintiff immediately after she first complained

1 about Cox's failure to pay overtime (Dkt. # 52 at 117), Plaintiff has presented sufficient
2 evidence of retaliatory animus to withstand summary judgment. *See Villiarimo*, 281 F.3d at
3 1063 (holding that a plaintiff can show pretext either by showing that a retaliatory "reason
4 more likely motivated" the employer or by showing that the employer's proffered reason is
5 "unworthy of credence").

Viewing these facts in the light most favorable to Cox, a reasonable jury could determine that the Company terminated Plaintiff based on an honest belief that she committed false disconnections. Summary judgment in Plaintiff's favor is therefore denied on this claim. Yet, because a fact finder could reasonably conclude that Cox's reason for terminating Plaintiff is pretext for retaliation, summary judgment in Cox's favor is also denied.

### (5) Unfavorable Job References

The Court also denies summary judgment on Plaintiff's claim that Cox retaliated against her by providing negative employment references to potential employers. Plaintiff's prima facie case is satisfied because Plaintiff presents evidence that Cox gave her a poor reference shortly after she complained about Cox's failure to pay her overtime. *See Williamson*, 208 F.3d at 1151 (holding that an informal complaint is a protected activity under the statute); *Ray*, 217 F.3d at 1240 (observing that an unfavorable job reference can constitute an adverse employment action); *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) (holding that causation can be inferred from timing alone depending on the circumstances of each case).

Although the parties agree that Cox considers Plaintiff to be ineligible for rehire, Cox asserts that there is no evidence that the Company ever shared this information with prospective employers. (*See* Dkt. # 40.) A review of the evidence, however, indicates otherwise. According to the record, Plaintiff applied for positions with five telecommunications companies after she was terminated. (Dkt. # 52 at ¶¶ 192, 197, 200, 203, 207.) The record further indicates that each of these prospective employers, who perform a substantial amount of contract work for Cox, were required to contact Cox about Plaintiff.

(*Id.*) According to Cox's own evidence, the Company has a policy pursuant to which its contractors are required to contact Cox regarding job applications from former Cox employees. (Dkt. # 41, Ex. 35 at ¶ 17.) This policy further provides that contractors must ensure that former Cox employees are rehirable by Cox before those employees are permitted to perform contract work for Cox.[5] (*Id.*) This is sufficient circumstantial evidence for a fact-finder to conclude that the prospective employers contacted Cox about Plaintiff. Given that Cox told Plaintiff that she was ineligible for rehire, a fact-finder could also reasonably conclude that Cox conveyed the same information to the prospective employers. *See Anderson*, 477 U.S. at 255 (requiring the Court to draw all reasonable inferences in non-moving party's favor on summary judgment). And although Plaintiff fails to show that she would have been hired by these employers but for Cox's negative references, the fact that an employer did not base its hiring decision on the poor reference does not preclude a claim for retaliation. *See Hashimoto v. Dalton*, 118 F.3d 671, 676 (9th Cir. 1997) (denying summary judgment on an employee's retaliation claim even though the employer proved that the poor job reference did not affect the prospective employer's decision not to hire the employee because the fact that "this unlawful personnel action turned out to be inconsequential goes to the issue of damages, not liability").

To the extent that Cox argues that it had a legitimate non-pretextual reason for providing a negative employment reference, questions of fact preclude summary judgment on this issue. While Cox has presented evidence that it listed Plaintiff as ineligible for rehire because she committed fraud (Dkt. # 52 at ¶ 146), Plaintiff presents evidence upon which a trier of fact could conclude that Cox did not honestly believe that she had committed fraud when the Company fired her and gave the unfavorable job reference. (*Id.* at ¶¶ 156, 160, 161,

---

[5]Plaintiff also presents her own deposition testimony as evidence that Cox provided negative employment references. According to Plaintiff, several of these prospective employers told her that she was not hired because Cox told them that Plaintiff was ineligible for rehire. (*See, e.g.*, Dkt. # 53 ¶ 195.) This evidence, however, appears to be inadmissible double hearsay; therefore, the Court has not taken it into consideration in resolving the parties' motions. *See* Fed. R. Evid. 802–803.

1  164.) Accordingly, to the extent that the parties seek summary judgment on this claim, both
2  Motions are denied.

3        **C.**       **Punitive Damages Under the FLSA**

4       The parties next dispute whether the FLSA's retaliation provisions permit punitive
5  damages. Under § 216(b) of the statute, an aggrieved employee is entitled to "such legal and
6  equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) . . .
7  including without limitation employment, reinstatement, promotion, and payment of wages
8  lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). As both
9  parties agree, the Ninth Circuit has not yet definitively determined whether punitive damages
10 are available to a plaintiff suing for retaliation under the FLSA. Nevertheless, it appears that
11 the Ninth Circuit has endorsed the view that punitive damages are available for violations of
12 the FLSA's retaliation provisions. *See Lambert*, 180 F.3d at 1011. In *Lambert*, the court
13 declined to reach the issue of punitive damages under the FLSA because the defendant
14 waived the argument. *Id.* The Ninth Circuit explicitly acknowledged, however, that it found
15 the Seventh Circuit's determination that punitive damages are available under the FLSA to
16 be "persuasive." *Id.* (citing *Travis v. Gary Cmty Mental Health Ctr., Inc.*, 921 F.2d 108,
17 111–12 (7th Cir. 1990) *cert. denied*, 502 U.S. 812 (1991)).

18       Focusing on the plain language of § 216(b), the Seventh Circuit in *Travis* specifically
19 held that punitive damages are available under the FLSA's retaliation provisions. *See* 921 at
20 111–12. As enacted in 1938, § 216(b) allowed only for specific types of damages that
21 excluded compensatory and punitive damages. *Id.* at 111. Congress, however, later amended
22 § 216(b) and eliminated this limitation and replaced it with the following: "Any employer
23 who violates the provisions of section 15(a)(3) of this Act [29 U.S.C. § 215(a)(3)] shall be
24 liable for such legal or equitable relief as may be appropriate to effectuate the purposes of
25 section 15(a)(3), including without limitation employment reinstatement or promotion and
26 the payment of wages lost and an additional amount of liquidated damages." *Id.* (quoting
27 Pub.L. 95-151, 91 Stat. 1252 (1977)). The court in *Travis* then explained that the provision,
28 as amended, indicated Congress's intent to give courts the discretion to grant relief as

appropriate, including punitive damages. *Id.* at 112. Indeed, the term "legal" relief is "commonly understood to include compensatory and punitive damages." *Id.* at 111.

As the Southern District of New York has further noted, "this interpretation comports" with the Supreme Court's decision in *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 66 (1992). *See Shines v. Serv. Corp. Intern.*, 2006 WL 3247663, at *2 (S.D. N.Y. Nov. 8, 2006). In *Franklin*, the Supreme Court reaffirmed the principle that "[w]here legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." 503 U.S. at 66 (1992) (quotation omitted). According to this principal, courts may "presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise." *Id.* (internal citation omitted). "Clearly, as the Seventh Circuit found, language in § 216(b), which makes violators liable . . . 'for such legal or equitable relief as may be appropriate' and prefaces the list of possible forms such relief can take with the phrase 'without limitation,' does not expressly indicate otherwise, but rather indicates quite the opposite." *Shines*, 2006 WL 3247663, at *2 (quoting 29 U.S.C. § 216(a) and citing *Travis*, 921 F.2d at 111).

The Court is aware that the Eleventh Circuit and some district courts have relied on the legislative history of the Statute to hold that § 216(b) prohibits punitive damages. *See Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928 (11th Cir. 2000); *see also Tumulty v. FedEx*, 2005 WL 1979104, at *11 (W.D. Wash. Aug. 16, 2005). Nonetheless, those courts fail to address the language in *Franklin* explaining that courts should presume the availability of all appropriate remedies absent an *express* indication otherwise. *See* 503 U.S. at 66. As discussed in *Shines*, there is no *express* prohibition on punitive damages in the text of §§ 215(b) and 216(a). 2006 WL 3247663, at *2. Accordingly, based on *Travis*, 921 F.2d at 111, *Lambert*, 180 F.3d at 1011, and their progeny, the Court holds that the FLSA permits Plaintiff to seek punitive damages for Cox's alleged violation of the Statute's retaliation provisions.

/ / /

/ / /

## II. Plaintiff's Tortious Interference with Contract Claim

To prevail on a claim for tortious interference under Arizona law, a plaintiff must establish: (1) the existence of a valid third-party contractual relationship or business expectancy; (2) the interferer's knowledge of the relationship or expectancy; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) the interference is improper as to motive or means; and (5) resultant damages to the party whose relationship or expectancy has been disrupted. *See Wallace v. Casa Grande Union High Sch. Dist. No. 82*, 184 Ariz. 419, 428, 909 P.2d 486, 494 (Ct. App. 1995)

Genuine issues of material fact preclude summary judgment on this claim. Viewing the record in the light most favorable to Plaintiff, she has submitted sufficient evidence for a reasonable jury to conclude that Cox unlawfully interfered with Plaintiff's potential employment opportunities. Pursuant to Cox policy, the telecommunications companies that performed contract work for Cox were all required to contact Cox to determine whether Plaintiff was eligible to work on Cox jobs. (Dkt. # 4, Ex. 35 at ¶ 17.) Similarly, because a reasonable fact-finder could determine that Cox did not have a good faith basis for terminating Plaintiff and listing her as ineligible for rehire, there are issues of fact with respect to Cox's assertion that the employment references were neither wrongful nor improper. (*See* Dkt. # 40 at 14 n. 3.) Indeed, Plaintiff has presented evidence that she never performed any wrongful disconnects and she has further adduced evidence that Cox Management was aware of these exculpatory facts when the Company fired her. (Dkt. # 41, Ex. 35 at ¶ 17.) Accordingly, the basis for Cox's request for summary judgment on Plaintiff's tortious interference claim fails.

## CONCLUSION

Having determined that there are genuine issues of material fact with respect to several aspects of Plaintiff's FLSA and tortious interference claims,

**IT IS THEREFORE ORDERED** that the Cox's Motion for Summary Judgment (Dkt. # 40) is **GRANTED IN PART AND DENIED IN PART**:

1     (1)     Summary judgment is **GRANTED** in Cox's favor to the extent that Plaintiff claims that Cox retaliated against her when a Company Manager used offensive language, assigned her to a new geographic work area, and denied her request to transfer to another department;

(2)     Cox's request for summary judgment is **DENIED** with respect to Plaintiff's claims that the Company retaliated against her by terminating her and giving her negative employment references;

(3)     Cox's request for summary judgment is also **DENIED** with respect to Plaintiff's claim that the Company tortuously interfered with contractual relations between Plaintiff and prospective employers.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment on her FLSA claims (Dkt. # 42) is **DENIED**.

**IT IS FURTHER ORDERED** that the parties' stipulation to temporarily hold the Court's decision on their pending motions (Dkt. # 67) is **DENIED** as moot. The parties' stipulation to modify the Court's scheduling order (Dkt. # 67) is also **DENIED** as the parties have not demonstrated the requisite circumstances for modifying that order. (*See* Dkt. # 15.)

DATED this 4th day of May, 2010.

_____
G. Murray Snow
United States District Judge